# EXHIBIT C

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

September 16 2021 10:49 AM

KEVIN STOCK
COUNTY CLERK
NO: 21-2-07481-4

## In the Superior Court of the State of Washington For Pierce County

| | |
|---|---|
| Kristi Smith,<br><br>　　　　　　Plaintiff,<br><br>Vs.<br><br>Clover Park School District No. 400,<br><br>　　　　　　Defendant. | No.<br><br>**Complaint for Damages** |

Plaintiff alleges as follows:

### I.   Parties

1.1.   Plaintiff Kristi Smith ("Smith") is a Washington resident and is employed with Clover Park School District, which is located in Pierce County, Washington.

1.2.   Defendant Clover Park School District No. 400 ("the District") is a municipal corporation.

1.3.   The District is an "employer" within the meaning of RCW 49.60, RCW 49.48, and RCW 49.52.

1.4.   The District has, and at all times relevant to this Complaint had, more than 50 employees.

1.5.   The District is an "agency" within the meaning of RCW 49.52.010(1).

### II.   Jurisdiction & Venue

2.1.   Pierce County Superior Court has jurisdiction over Plaintiff's claims under RCW 2.08.010 and other applicable law.

Complaint – 1 of 14
(No.　　　　　)



Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

2.2. Venue is proper in Pierce County Superior Court, including under RCW 4.92.010 and other applicable law, because the District operates in Pierce County and because the acts and omissions described in this Complaint for Damages occurred in Pierce County.

### III. Facts

3.1. Smith was hired by the District on or about July 1, 2014.

3.2. In August 2019, Smith held the position of Assistant Superintendent of Instructional Programs for Clover Park School District.

3.3. On or about August 5, 2019, Smith sustained a head injury at home, for which she sought medical treatment.

3.4. Following her head injury, Smith had difficulty with concentrating, focusing, reading, language, and using screens for long durations.

3.5. Following her August 5, 2019 head injury, Smith had a "disability" within the meaning of RCW 49.60.040.

3.6. Shortly after her injury, Smith gave the District written and verbal notice that she had a disability.

3.7. Smith attempted to work part time following her injury. Almost immediately, Smith began to experience unfavorable treatment from District employees that was not experienced by individuals without a disability. Among other things, Smith was held to different standards than her peers such as being asked to justify meetings and the attendees invited to those meetings. Smith was also sidestepped and her approval authority over areas she oversaw was ignored.

3.8. Smith documented her concerns in a letter dated September 6, 2019. She handed that letter to the District's Executive Director of Human Resources, Lori McStay, on the morning of September 6, 2019. McStay asked Smith some questions about the letter, folded it in half, and handed it back to Smith.

Complaint – 2 of 14
(No.            )

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

3.9. Due to her medical disability, Smith was entitled to medical leave under both state and federal law. Smith's physician confirmed this fact and Smith was on full time leave beginning September 6, 2019.

3.10. In approximately November 2019, the District hired someone for the position of Smith's secretary. The District did not notify Smith that it was hiring for the position and did not consult with Smith or seek her input. Smith learned that a secretary had been hired for her from someone who had learned that information from the new hire.

3.11. By letter dated December 17, 2019, Smith's physician cleared Smith to return to work on a part-time basis as of Monday, January 6, 2020.

3.12. In late December 2019, the District's HR department called Smith to come in for a meeting the next day. Smith's condition did not allow her to attend in-person on such short notice, so arrangements were made for her to participate by phone, instead. McStay, Linda Krininger, and a payroll manager were on the call for the District. Smith requested reasonable accommodations from the District as recommended by her physician.

3.13. On Friday, January 3, 2020, Smith received a phone call from McStay. Among other things, McStay said that Smith's job role might be adjusted. This was upsetting to Smith.

3.14. The unfavorable treatment of Smith continued almost immediately after she returned to work on January 6. For example, during a meeting that morning, Superintendent Ron Banner asked a question about federal funding for a homeless student liaison. Smith had been in charge of that project for approximately three years. But when she started to answer, Banner interrupted, cut Smith off, and redirected the question to another person.

3.15. Following the meeting, Banner and McStay held a preplanned meeting in Smith's office. Banner said he knew that it may have seemed strange that he did not let Smith share information about a program for which she had been in charge for years. Banner then added words to the effect of "but you have not been here," or "you weren't here" to explain why he had cut Smith off from answering his question during the meeting.

Complaint – 3 of 14
(No.            )

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

3.16. During the same meeting Banner informed Smith that he was removing the Teaching and Learning Department from her supervision, but that he would think about giving her a different "easier" department to oversee.

3.17. Smith had overseen Teaching and Learning since she was hired by the District. She initially spent several years as the Director of Teaching and Learning before being promoted to Teaching and Learning's Executive Director. Smith was later promoted again to Assistant Superintendent of Elementary Schools and Teaching and Learning. From there, Smith was moved to a new position created by Banner, Assistant Superintendent of Instructional Programs, where she continued to oversee Teaching and Learning.

3.18. Upon being informed that Teaching and Learning—which Smith knows and loves—was being taken from her, Smith began to cry. She asked Banner, through tears, whether the change would be for a short period. Banner said he did not know but that the change would at least be through the end of the year. Banner said that Tess McCartan had been overseeing Teaching and Learning during Smith's absence but that he was going to move the department to Brian Laubach. Banner became angry that Smith was emotional about losing Teaching and Learning and asked where Smith's reaction was coming from. After Smith explained that Teaching and Learning was her passion and the reason Smith came to the District, Banner mockingly asked Smith if she was "afraid to learn something new."

3.19. On January 13, 2020, Banner informed Smith that she would be in charge of Student Services instead of Teaching and Learning. The change was announced that day.

3.20. Smith could perform all her pre-disability duties, including overseeing Teaching and Learning, with reasonable accommodation.

3.21. Smith continued to experience hostile and unfavorable treatment following her January 2020 return to work. Prior to her disability, Banner frequently sought Smith's consultation and valued her expertise. Smith was a member of the Superintendent's Council. But after Smith's injury and disability, Banner would go days or weeks without interacting with Smith, even though the two shared the same office suite.

COMPLAINT – 4 of 14
(No.            )



3.22.    Other District employees, including members of the Superintendent's Council and Smith's own team, began isolating Smith. Many avoided speaking with Smith or even making eye contact with her. Smith later learned that District employees were openly discussing their belief that Smith had faked her injury, was faking her disability, and that they were treating poorly as a result.

3.23.    On March 10, 2020, Smith was preparing for a regularly scheduled 11:00 a.m. meeting with Banner. About 10 minutes before that meeting, Smith was called into a conference room with Banner and McStay. There, Banner said that the change to Smith's position would be permanent and handed Smith a letter outlining the change. Banner told Smith that she was being moved to a subordinate position as the Director of Student Services effective July 1, 2020, and that Smith's position was being "eliminated." McStay then showed Smith a salary schedule showing that her compensation would drop significantly due to the demotion. Smith's salary at the time was classified is I-6 on the Council salary schedule ($194,867/year). But instead of an increase in compensation going forward, Smith would be placed on the G-7 classification ($173,816/year) following the demotion.

3.24.    Smith composed herself after the March 10, 2020 meeting with Banner and McStay and was determined to continue doing her work. Banner skipped the 11:00 a.m. meeting.

3.25.    On March 12, 2020, Smith met with Banner and McStay to discuss the demotion further. Smith shared her concern about the significant harm caused by the change, including lost salary, damage to Smith's résumé and ability to find comparable future employment, and Smith's removal from the Superintendent's Council. Smith stated her observation that even people with poor performance had been treated better than her. Banner forcefully responded that what was happening to Smith was not due to her performance.

3.26.    Regarding Smith's removal from the Superintendent's Council, Banner said that Smith new position is not Council level. Smith responded that Superintendent Banner has the right and latitude to have any person he wants on the Superintendent's Council and that he was choosing to have Smith off. Banner responded that this was the best direction forward.

Complaint – 5 of 14
(No.                    )



3.27.   During the March 12, 2020 meeting, Banner said that he was open to salary negotiations. McStay separately encouraged Smith to follow up with Banner on salary. Smith did so in the afternoon on the same day. Banner told Smith not to expect much and that any increased compensation would only be for the first year.

3.28.   Smith then asked about her title, explaining that she hoped to at least avoid her résumé being ruined by the demotion, so that she could at least continue her advance her career. Banner responded that he was even less open to a title change than a salary adjustment. Recognizing the devastating impact on Smith's career prospects, Banner told Smith that he made the change early so she could apply elsewhere with Assistant Superintendent still on her résumé.

3.29.   The District subsequently asserted—initially through McStay—that Smith could have sought another Assistant Superintendent position within the District, specifically Assistant Superintendent of Secondary Schools. But during the March 12, 2020 meeting, Banner expressly told Smith that there were no suitable open positions within the District beyond the Director of Student Services position. At the time, Banner knew that the Assistant Superintendent of Secondary Schools position would be open for applicants within a week. He did not tell Smith about the position, suggest that she apply, or tell Smith that she was required to apply to be considered for the job. During her entire employment with the District, Smith had always been promoted without application. McStay subsequently sent an email to Smith stating that "this reorganization created a vacancy in the Assistant Superintendent of Secondary Schools position," and that Smith "did not apply for that position." In response, Smith explained what had happened during the March 12, 2020 meeting and that "the message was clear – [Smith] would not be considered for the" position. Nonetheless, Smith asked McStay to be considered for the position. After emailing with legal counsel, McStay responded, stating that Smith would not be considered for the position.

3.30.   Laubach was promoted to the position of Deputy Superintendent. The District posted the position on March 16, 2020 and closed it on March 17, 2020. Laubach's salary increased to $210,654 per year.

COMPLAINT – 6 of 14
(No.                    )



3.31. Smith continued to experience a hostile work environment. She was publicly called out for perceived errors and talked down to and demeaned by District employees. Smith was deliberately left out of meetings where her presence was necessary only to subsequently be called out in meetings about not communicating or coordinating well—the reason for the meetings from which she was excluded. Smith was also left off emails on matters directly relevant to her job duties. Banner would undermine Smith's ability to do her job in ways both large and petty, including pulling people that Smith needed in meetings and even taking a meeting room from her. During other meetings, Superintendent's Council members would direct questions within Smith's purview to others.

3.32. Other District employees also observed that Smith was being treated in a hostile and unfair way, particularly by Banner. In April 2020, McStay and Krininger called one District employee into the office as part of an investigation into the employee's statements that Banner was making things difficult for Smith. That employee had commented on her observations that Banner's treatment of Smith had changed since Smith's injury and disability, and about her perception that Banner and other administrators were setting Smith up for failure.

3.33. Banner commenced a Human Resources investigation into the employee for making comments about her perception that Banner or others were treating Smith unfairly. This prompted the employee to make her own written "formal complaint against the superintendent," in which she asked of Banner's investigation: "What purpose did this serve other that [sic] a form of intimidation?" The employee's complaint states, in part:

> I have never done anything like this, so I don't even know if there is a more official process by which to lodge a complaint. What I do know is that I feel that at the most, the superintendent's request in this matter was intimidation, and at the very least it was petty and hypocritical.

3.34. McStay reviewed the employee's complaint and denied and further action in a letter dated May 28, 2020.

3.35. In a subsequent email to McStay, the complaining employee wrote, in part:

COMPLAINT – 7 of 14
(No.              )



> I would, however, like to add some clarification about "the comments you made about your supervisor". I believe I was clear that my concern was not whether my supervisor [Smith] could perform the duties of Student Services Director, but rather my concerns were about Student Services becoming collateral damage due to some of the ways I perceived the Assistant Superintendent for Instructional Programs [Smith] was being treated by the superintendent and other administrators.

3.36. In April 2020, the same complaining employee approached Smith to apologize because she had engaged in inappropriate conversations with other District administrators, in which they questioned the veracity of Smith's injury and disability. In a subsequent email to McStay, the employee wrote, in part:

> My personal apology to my supervisor [Smith] was because I had engaged in some inappropriate conversations about the veracity of her head injury with other administrators. It was wrong and it was cruel and I apologized to her and sought her forgiveness.

3.37. Despite being informed that administrators were openly discussing Smith, her disability, and their personal belief that she was faking, neither McStay nor anyone else in the District's Human Resources department investigated the matter further or took any steps to prevent further mistreatment of Smith by District employees.

3.38. This is not inconsistent with other conduct that Smith regularly observed among the District's administration and HR professionals. For example, in Spring 2020, amidst the new COVID-19 pandemic and restrictions, Smith regularly observed Banner, McStay, and others openly questioning and mocking District employees who had taken leave due to their concerns about the virus. Smith wondered if similar conversations about her occurred in her absence while she was dealing with her own medical challenges.

3.39. In an April 19, 2020 email to McStay, Smith complained about the discriminatory and retaliatory treatment she was experiencing. She wrote, in part:

> The level of agitation directed at me and those who I supervise is increasing in hostility. Over the past weeks the situation has escalated and I understand that others who have recognized the

COMPLAINT – 8 of 14
(No.          )

BECK CHASE GILMAN PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

> unfair way in which I have been treated have been called in and questioned about it. Unjust assumptions about the work of my departments and the critical response and reactionary changes made by others have caused work in my departments to be unnecessarily delayed and created frustration.
>
> . . . .
>
> My family and I are devastated by the treatment I have experienced since my injury after so many years of faithful service to the District. As Human Resources Executive Director, what can you do to address these events?

3.40. McStay sent a responsive email to Smith, dismissing her complaints. Neither McStay nor any other District employee took any further action to investigate or address the mistreatment for which Smith sought assistance.

3.41. Smith filed a charge with the Washington Human Rights Commission ("HRC") on June 22, 2020, addressing the District's treatment of her following her disability.

3.42. The discriminatory and retaliatory treatment of Smith by the District's employees continued or increased after Smith submitted the HRC charge.

3.43. Smith was the only District employee who suffered financial and personal consequences as a result of the "reorganization" that resulted in her demotion. After Smith's injury and disability, the District and Banner removed Smith's job duties because she had been absent to tend to her disability; demoted Smith to a subordinate position with a lesser title; and substantially reduced Smith's compensation. District employees, including Banner, directed hostility and unfavorable treatment toward Smith because she had a disability that required accommodation and in retaliation for her engaging in protected activities.

3.44. As a direct and proximate cause of the District's conduct, Smith has suffered economic damages, including in the form of diminished past and future compensation. Smith has also suffered non-economic damages, including substantial emotional distress, humiliation, anxiety, and stress.

Complaint – 9 of 14
(No.            )

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

3.45. Through counsel, Smith submitted a completed Clover Park School District Claim for Damages form to the registered agent for the District on July 13, 2021. The District's registered agent received the claim form on July 15, 2021. Smith has complied with all statutory pre-filing obligations under Chapter 4.96 RCW.

## IV. First cause of Action: Disability Discrimination

4.1. Smith realleges and incorporates all allegations above.

4.2. Smith became disabled under the Washington Law Against Discrimination following her August 5, 2019 head injury.

4.3. After becoming disabled, Smith was subject to adverse employment actions, including but not limited to removal from her Assistant Superintendent position, reduction in her compensation, transfer to a subordinate position, removal of duties and authority, and unfavorable treatment by District administrators and employees.

4.4. Smith was satisfactorily performing her job as Assistant Superintendent of Instruction at the time she suffered the adverse employment actions in the preceding paragraph 4.3.

4.5. Smith's disability was a substantial factor contributing to the adverse employment actions taken against her by the District.

4.6. Smith was also subjected to a hostile and abusive work environment in which she was and continues to be treated differently and less favorably than District employees who are not disabled.

4.7. As a direct and proximate cause of the District's conduct, Smith has suffered economic and non-economic damages in an amount to be proved at trial.

## V. Second cause of Action: Retaliation

5.1. Smith realleges and incorporates all allegations above.



5.2. Smith engaged in protected activities, including seeking medical leave to treat her injury and disability, seeking reasonable accommodations to allow her to perform her job, complaining to the District's Human Resources department about ongoing discriminatory treatment, and filing a charge with the HRC.

5.3. Smith suffered adverse employment actions, including as set forth in paragraph 4.3, above, and there is a direct causal link between her protected activities and those adverse employment actions.

5.4. Smith was satisfactorily performing her job as Assistant Superintendent of Instruction at the time she suffered the adverse employment actions.

5.5. Smith's protected activities were a substantial factor contributing to these adverse employment actions.

5.6. As a direct and proximate cause of the District's conduct, Smith has suffered economic and non-economic damages in an amount to be proved at trial.

## VI.   Third cause of Action: Violation of Family Medical Leave Act

6.1. Smith realleges and incorporates all allegations above.

6.2. Smith's taking of FMLA-protected leave constituted a negative factor in the decision to demote her to a subordinate position and reduce her compensation.

6.3. Smith engaged in protected FMLA opposition activity, including when she complained to the District's administration that her job duties were altered because she took FMLA leave and that she experienced harassment because she took FMLA leave.

6.4. The District interfered with Smith's FMLA rights and retaliated against her for engaging in protected activity, including by transferring her to a subordinate position and reducing her compensation.

6.5. As a direct and proximate cause of the District's conduct, Smith has suffered economic and non-economic damages in an amount to be proved at trial and is entitled to recover past and future wages, salary, employment benefits, or other compensation lost or denied by

Complaint – 11 of 14
(No.                    )


Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

reason of violation of the FMLA, plus interest calculated at the prevailing rate, and liquidated damages in the amount of the past and future compensation and interest due, as authorized by the FMLA.

## VII. Fourth cause of Action:
### Violation of Washington Family and Medical Leave Act

9.1. Smith realleges and incorporates all allegations above.

9.2. Under Washington law, employees who take family or medical leave are entitled, upon return from leave, to (a) be restored by the employer to the position of employment held by the employee when leave commenced; or (b) to be restored by the employer to an equivalent position with equivalent employment, pay, and other terms and conditions of employment.

9.3. The District failed to restore Smith to the position of employment that she held when her medical leave commenced.

9.4. The District failed to restore Smith to an equivalent position with equivalent employment, pay, and other terms and conditions of employment.

9.5. As a direct and proximate cause of the District's conduct, Smith has suffered economic and non-economic damages in an amount to be proved at trial. Smith is also entitled to recover reasonable attorney's fees, reasonable expert witness fees, and other costs of the action to be paid by the District.

## VIII. Fifth cause of Action:
### Unlawful Wage Withholding

8.1. Smith realleges and incorporates all allegations above.

8.2. The District has failed to pay Smith the wages to which she would otherwise be entitled had she not developed a disability and engaged in protected activities.

8.3. The District has acted willfully and with intent to deprive Smith of her full compensation.

Complaint – 12 of 14
(No.            )

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

8.4. The District is liable for twice the wages unlawfully withheld from Smith, together with costs of suit and reasonable attorney's fees necessitated by the District's conduct as set forth in RCW 49.52.070 and other applicable law.

### IX.  Sixth cause of Action: Injunctive and Declaratory Relief

9.1. Smith realleges and incorporates all allegations above.

9.2. Smith seeks a judicial declaration that the District's practices or treatment of her disability and request for reasonable accommodation were unlawful and in violation of the Washington Law Against Discrimination.

9.3. At the Court's discretion, Smith further seeks an injunction ordering the District to comply with the Washington Law Against Discrimination as so ordered by the Court, examples which may include: (a) returning her to the position she held prior to becoming disabled, with the attendant compensation; (b) providing appropriate training to all administrative personnel regarding compliance with State and federal antidiscrimination and antiretaliation law; (c) submitting to an appropriate third-party audit/investigation into the District's antidiscrimination and antiretaliation policies and procedures; (d) submitting to appropriate ongoing oversight of the District's antidiscrimination and antiretaliation policies and procedures, including the implementation of any recommendations resulting from the third-party audit/investigation; and/or (e) all other equitable relief as the Court deems just and appropriate.

### X.  Relief Requested

Plaintiff Kristi Smith seeks Judgement in her favor and against Defendant Clover Park School District as follows:

A. Awarding past and future economic and non-economic damages, including past and future wage loss;

B. Awarding all costs, expenses of litigation, and attorneys' fees as allowed by law, including under RCW Chapters 49.60, 49.52, 49.48, and 50A.40.040;

Complaint – 13 of 14
(No.           )



1  C. Awarding liquidated double damages;

2  D. Awarding prejudgment and post-judgment interest;

3  E. Enhancement of all awards for tax consequences to make Plaintiff whole;

4  F. Awarding of all injunctive, declaratory, or punitive relief as the Court deems reasonable appropriate; and

5

6  G. Ordering all other relief as the Court deems just and equitable.

Dated September 16, 2021.

BECK CHASE GILMAN PLLC

By: _____
James W. Beck, WSBA No. 34208
james@bcglawyers.com | D 253.289.5122
Eric D. Gilman, WSBA No. 41680
eric@bcglawyers.com | D 253.289.5108
Janelle E. Chase Fazio, WSBA No. 51254
janelle@bcglawyers.com | D 253.289.5136
Attorneys for Plaintiff Kristi Smith

COMPLAINT – 14 of 14
(No.            )

BECK CHASE GILMAN PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com