1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KRISTI SMITH,

                Plaintiff,

     v.

CLOVER PARK SCHOOL DISTRICT NO. 400,

                Defendant.

CASE NO. 3:21-cv-05767

ORDER

# I

## INTRODUCTION

This matter comes before the Court on Plaintiff Kristi Smith's Motion to Strike Experts (Dkt. # 20), Plaintiff's Motion for Partial Summary Judgment (Dkt. # 22), and Defendant Clover Park School District No. 400's Motion for Summary Judgment (Dkt. # 29). Having considered the submissions in support of and in opposition to the motions, the applicable law, and the balance of the case file, the Court GRANTS in part and DENIES in part both of Plaintiff's motions and DENIES Defendant's motion.

ORDER - 1

## II

### BACKGROUND

This is an employment discrimination case in which Plaintiff Kristi Smith sues her employer, Defendant Clover Park School District ("the District"), for violations of the Family and Medical Leave Act (FMLA), the Washington Family Leave Act (WFLA), the Washington Law Against Discrimination (WLAD), and RCW 49.52.070 (Unlawful Wage Withholding). Dkt. # 1–1 at 11–15.

Smith has worked for the District since 2014, and in August 2019 she held the position of Assistant Superintendent of Instructional Programs. *Id.* at 3. She was employed on a one-year contract that began on July 1, 2019 and lasted for the duration of the 2019–2020 school year. Dkt. # 30–1 at 2–3.

On August 5, 2019, Smith sustained a head injury for which she sought treatment and ultimately requested medical leave and accommodations. Dkt. # 1–1 at 3–4; Dkt. # 23 at 10–11, 179–194. Upon her return from leave in January 2020, Smith's supervisor, Superintendent Ronald Banner, informed her that one of the departments she had previously overseen, Teaching and Learning, would be removed from her supervision. Dkt. # 1–1 at 5; Dkt. # 23 at 17. One week later, Banner informed Smith that she would be overseeing another department, Student Services, instead of Teaching and Learning. Dkt. # 1–1 at 5; Dkt. # 23 at 17.

In March 2020, Banner informed Smith that the change to her position would be permanent. Dkt. # 1–1 at 6. He also informed her that at the end of her contract term, she would be transferred to the subordinate position of Director of Student Services for the new school year. *Id.* at 6; Dkt. # 23 at 211–216. Smith's salary would be reduced and she would move down from a "Grade I, Step 6" to a "Grade G, Step 7." Dkt. # 23 at 213; Dkt. # 30–1 at 2–6. Smith

expressed concerns about these changes, but ultimately accepted the transfer and signed a one-year contract for the 2020–2021 term on April 22, 2020.  Dkt. # 1–1 at 6–7; Dkt. # 30–1 at 6.

In addition to these changes to her role and responsibilities, Smith claims that after her injury—both before and after she took medical leave—she experienced mistreatment and hostility from District employees that was not experienced by individuals without a disability. *See, e.g.*, Dkts. ## 1–1 at 3–10; 23 at 15–16; 35 at 40–53.  For example, she claims that her decisions were questioned and that her input and approval authority over areas she oversaw was ignored. *Id.*  She alleges that both her peers and her supervisors treated her this way.  *Id.*  Smith complained multiple times about this alleged mistreatment, including in writing to Banner and the District's Director of Human Resources, Lori McStay, and by filing a complaint with the Washington State Human Rights Commission.  Dkts. ## 1–1 at 3, 9; 20–1 at 96; 23 at 241.

Plaintiff began this lawsuit in Pierce County Superior Court on September 16, 2021.  Dkt. # 1–1.  Defendant removed the case to federal court on October 15, 2021.  Dkt. # 1.  On October 6, 2022, Plaintiff filed a Motion to Strike Experts.  Dkt. # 20.  On October 13, 2022, Plaintiff moved for partial summary judgment, Dkt. # 22, and on October 27, 2022, Defendant moved for summary judgment.  Dkt. # 29.

### III

### DISCUSSION

A.  Plaintiff's Motion to Strike Experts

Plaintiff moves to exclude the testimony of two of Defendant's expert witnesses, William Partin and Carla Santorno.  Dkt. # 20.  Defendant timely disclosed these two experts on July 22, 2022.  Dkt. # 20–1 at 179–182.  They stated in their disclosure that William Partin was "expected

to rebut any opinions offered by plaintiff's forensic expert, Tapia,[1] or other experts addressing any economic damages." *Id.* at 180.  Along with the disclosures, Defendant submitted a report by Carla Santorno in which she opined on the issue of "whether legitimate justification existed as to the superintendent's decision to transfer Ms. Kristi Smith to a subordinate position in light of realignment of the superintendent's council due to the appointment of the Deputy Superintendent position."  Dkt. # 20–1 at 184–204.  Defendant then produced Partin's rebuttal report in an email on September 21, 2022.  *Id.* at 207–230.  This rebuttal report opines that Plaintiff's damages were significantly lower than Tapia's estimate because she should have found equivalent employment within three years.  *Id.* at 216.  These sections of Mr. Partin's report are based on "discussions with Ms. Santorno and Mr. MacGregor."  *Id.*  In the same email to which Mr. Partin's report was attached, Defendant stated, "Santorno will be supplementing her opinions to address the opportunities available to Ms. Smith for Assistant Superintendent or similar positions."  *Id.* at 206.  As of the filing of Plaintiff's motion, Defendant had not produced Santorno's supplemental report.  Dkt. # 20 at 9.

Plaintiff asks the Court to strike Partin from the witness list and preclude Santorno from offering any opinions beyond the scope of her opening expert disclosure.  Dkt. # 20.  Plaintiff argues that the reports are untimely, that they do not fall within the scope of proper rebuttal or supplemental testimony, respectively, and that Partin's report improperly incorporates others' previously undisclosed expert opinions and hearsay.  *Id.*

---

[1] Plaintiff timely disclosed Christina Tapia as an expert witness and attached a preliminary report in which she opined on "the economic losses sustained by Kristi Smith as a result of her demotion on July 1, 2020 during her employment with the Clover Park School District."  Dkt. # 20–1 at 167.  She did not address mitigation of damages.  *Id.*

ORDER - 4

1

2

          i.     Carla Santorno's Report

Federal Rule of Civil Procedure 26(e) requires a party to supplement an expert's report or

deposition "if the party learns that in some material respect the disclosure or response is

incomplete or incorrect, and if the additional or corrective information has not otherwise been

made known to the other parties during the discovery process in writing." Fed. R. Civ. P. 26(e).

But the supplementation requirement "is not intended . . . to permit parties to add new opinions

to an expert report based on evidence that was available at the time the initial report was due."

*United States ex rel. Brown v. Celgene Corp.*, No. CV 10-3165 GHK (SS), 2016 WL 6562065, at

*4 (C.D. Cal. Aug. 23, 2016); *see also Beller ex. Rep. Beller v. United States*, 221 F.R.D. 696,

701 (D. N.M. 2003) ("supplementary disclosures do not permit a party to introduce new opinions

after the disclosure deadline under the guise of a 'supplement' . . . to rule otherwise would create

a system where preliminary reports could be followed by supplementary reports and there would

be no finality to expert reports"); *Metro Ford Truck Sales, Inc. v. Ford Motor Co.,* 145 F.3d 320,

324 (5th Cir. 1998) (supplemental disclosures "are not intended to provide an extension of the

expert designation and report production deadline"); *Akeva LLC v. Mizuno Corp.*, 212 F.R.D.

306, 310 (M.D. N.C. 2002) (rejecting "a definition of supplementation which would essentially

allow for unlimited bolstering of expert opinions" and noting that Rule 26(e) "does not cover

failures of omission because the expert did an inadequate or incomplete preparation").

The subject of mitigation is separate from whether Defendant's decision to demote

Plaintiff was justified, and it is therefore beyond the scope of proper supplementation and subject

to exclusion under Rule 37(c). Allowing Santorno to opine on Plaintiff's alleged failure to

mitigate would enable Defendant to circumvent the full disclosure requirement implicit in Rule

26. *See Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1063 (C.D. Cal. 2010); *Cohlmia v. Ardent

Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008). Further, Ms. Santorno testified in

her deposition that, had she been asked to provide her opinion about Plaintiff's employability or ability to mitigate in her initial report, she could have. *See* Dkt. # 21 at 8; *see also Celgene*, No. CV 10-3165 GHK (SS), 2016 WL 6562065, at *4; *Salgado v. General Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1998) (affirming exclusion of expert witness testimony where, among other things, "information contained in the supplemental report must have been available before the missed deadline"). Because Ms. Santorno's "supplemental" report was not timely disclosed before the initial expert disclosure deadline, and because it does not qualify as proper supplementation, she may not testify beyond the scope of her opening disclosure.

ii.    William Partin's Report

The parties dispute whether Partin's report, which Defendant contends is a rebuttal report, was timely. *See* Dkt. # 20 at 8–9; Dkt. # 24 at 11–12. They disagree about the proper interpretation of Federal Rule of Civil Procedure 26(a)(2)(D), which states:

Absent a stipulation or a court order, [expert] disclosures must be made:

    (i)    at least 90 days before the date set for trial or for the case to be ready for trial; or

    (ii)    if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

Fed. R. Civ. P. 26(a)(2)(D). Before this case was transferred to the undersigned judge, an order setting trial and pretrial dates was entered. Dkt. # 11. The order does not set a deadline for disclosures and reports of rebuttal expert witnesses. *Id*.

Plaintiff argues that subsection (ii) of the rule requires all rebuttal experts to be disclosed within thirty days after the initial expert disclosure to which they are submitting rebuttal testimony. This would mean that Partin's report was due no later than August 22, 2022 (thirty days after Plaintiff disclosed Tapia and provided her report and almost a month before the Partin

report was disclosed).  Dkt. # 20 at 8–9.  Defendant counters that Partin's report was timely because it was provided at least ninety days before the trial date, and because the rule contains an "or" clause.  Dkt. # 24 at 11–12.  Timeliness is important because it determines whether Defendant must show that the allegedly late disclosure was substantially justified or harmless.  *See Torres v. City of LA*, 548 F.3d 1197, 1212–13 (9th Cir. 2008).

The Court acknowledges that the wording of Rule 26(a)(2)(D) could be clearer but agrees with Defendant that Partin's report was timely.  The advisory committee notes explain that "disclosures are to be made by all parties at least 90 days before the trial date . . . except that an additional 30 days is allowed (unless the court specifies another time) for disclosure of [rebuttal] expert testimony."  Fed. R. Civ. P. 26(a)(2)(D), advisory committee's note to 1993 amendment; *see also Republic of Ecuador v. Mackay*, 742 F.3d 860, 865 (9th Cir. 2014) (advisory committee notes "are a particularly reliable indicator of legislative intent.").  The Court reads this annotation to mean that rebuttal expert reports may be provided *either* ninety days before trial, *or* less than ninety days before trial, so long as they are provided no more than thirty days after the initial expert's report.  Case law also supports the interpretation that subsection (ii) was meant to create an exception to the ninety-day deadline for expert reports, rather than a categorical rule that all rebuttal reports must be submitted thirty days after the initial expert disclosure.  *See, e.g.*, *Bagdasaryan v. Bayview Loan Servicing, LLC*, No. CV1406691SJOVBKX, 2016 WL 11744944, at *2 (C.D. Cal. Apr. 5, 2016) ("expert disclosures were due on or before January 13, 2016, or 90 days before the trial date of April 12, 2016.  In the case of rebuttal evidence, these disclosures were due 30 days after Defendants' disclosure").  The Court therefore concludes that Defendant need not show substantial justification or harmlessness.

Plaintiff's next argument is that Partin's report is not proper rebuttal because it contains opinions about mitigation, to which Plaintiff's expert did not opine.  Dkt. # 20 at 10–11.  "A

party can control the scope of the testimony of its adversary's rebuttal experts by limiting its own experts' testimony to a given subject matter." *Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*, No. C-93-20326 RPA, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995).  There does not appear to be a Ninth Circuit case on point.  And trial courts in this circuit do not appear to have reached consensus on whether the subject of mitigation falls within the scope of rebuttal to a lost wage damages calculation.  *Compare Rodriguez v. Walt Disney Parks & Resorts U.S., Inc.*, No. 817CV01314JLSJDEX, 2018 WL 3532906, at *2 (C.D. Cal. July 2, 2018) ("The subject of mitigation is not the same subject as the amount or calculation of Rodriguez's lost wages; instead, it is relevant to Disney's case-in-chief on its affirmative defense, on which Disney bears the burden") *with Humphreys v. Regents of Univ. of California*, No. C 04-03808 SI, 2006 WL 1867713, at *6 (N.D. Cal. July 6, 2006) ("Plaintiff contends that plaintiff's duty to mitigate is not properly rebuttal testimony because Trout made no opinion on plaintiff's duty to mitigate damages. The Court disagrees.  Fruehan's report exposes a potential flaw in Trout' method of determining the amount of damages [(i.e., not considering mitigation)].  Accordingly, it is properly classified as rebuttal testimony.").  But the Court does not reach the question whether Partin's opinions on mitigation are properly classified as rebuttal because it concludes below that these opinions are based on inadmissible hearsay and are beyond the scope of Partin's expertise.

While "an expert witness may be permitted to state an opinion based on otherwise inadmissible hearsay when the source of information is of a type reasonably relied upon by similar experts in arriving at sound opinions on the subject," *United States v. McCollum*, 732 F.2d 1419, 1422 (9th Cir. 1984) (internal quotation marks omitted), "Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th

Cir. 2013).  Nor may experts offer testimony "outside the areas [of their] expertise."  *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011); *See also Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969–90 (10th Cir. 2001) (expert testimony is admissible only if it is "within the reasonable confines of [their] subject area.").

Partin is Certified Public Accountant with expertise in forensic economics.  *See* Dkt. # 14 at 2; Dkt. # 14–2.  He is therefore qualified to offer expert testimony about valuation, income loss measurement, and similar topics.  But he is not a vocational expert and has no specialized knowledge about the administration and management of school districts, or whether Plaintiff would be an appropriate candidate for a particular position within the District.  In fact, he conceded this fact in his deposition multiple times.  *See, e.g.*, Dkt. # 21 at 21 ("I'm not an expert in . . . the management of school districts and what criteria . . . are considered by employers.").  In his report and deposition, he stated that he bases all his opinions about public school administration, job availability, and the hiring process on "discussions with Ms. Santorno and Mr. MacGregor."  *See, e.g.*, Dkt. # 20–1 at 210 ("According to our discussions with Ms. Santorno and Mr. MacGregor, Ms. Smith is a competitive candidate for higher level positions and has the opportunity to fully mitigate the alleged wage loss from July 2020 through present should she choose to engage in a diligent job search"), 211 ("Ms. Santorno indicated Ms. Smith could have fully restored her prior earning capacity within one to three years after she was notified of her transfer on a more probable than not basis if Ms. Smith performed a diligent job search and took the appropriate steps in the job application process"), 212 ("Ms. Santorno indicated Ms. Smith's transfer is not an obstacle for future advancement"), 213 ("Mr. MacGregor indicated that had Ms. Smith performed a diligent job search it would be reasonable to assume she would have secured employment in an equivalent position to her previous role of Assistant Superintendent of Instructional Programs within one year"), 216 ("The opinions of Ms. Santorno

and Mr. MacGregor indicate Ms. Smith has incurred no permanent harm to her 'but for' earning capacity and it could be fully restored within one to three years of receiving notice of the transfer"); *see also* Dkt. # 21 at 19 ("Q: So when your report assumes that Ms. Smith could have obtained an equivalent position in one to three years, that one to three years, is that based on any statistical analysis or review of data? A: The one- to three-year time frame is based on our discussions with Mr. MacGregor and Ms. Santorno"), 20 ("Q: So in evaluating whether Ms. Smith would be an appropriate candidate for a particular job, do the characteristics of that job need to be evaluated on a case-by-case basis? . . . A: Again, you are asking me a very detailed question about a school administration position. And I think Mr. MacGregor and Ms. Santorno would be better qualified to respond to this specific criteria that are looked for in successful candidates.").

Defendant appears to attempt to introduce Santorno's and MacGregor's opinions through Partin's report. Mitigation is an affirmative defense on which Defendant bears the burden. *See Rodriguez*, No. 817CV01314JDEX, 2018 WL 3532906, at *2. Defendant did not disclose a mitigation expert before the initial expert disclosure deadline and, as discussed above, their attempt to supplement Santorno's initial report with her opinions on mitigation violate Rule 26(e). MacGregor has not been disclosed as an expert. The Court will not allow Defendant now to back-door Santorno's and MacGregor's opinions about mitigation through a witness who is not independently qualified to opine on this topic.

But the Court will not strike Partin from the witness list entirely. He may still testify about Plaintiff's alleged economic loss, as he is qualified to offer opinions on this topic. He may not testify about Plaintiff's employability, the likelihood that she would have been able to obtain

substantially equivalent employment within a certain time, or any other subjects relating to mitigation.[2]

### B. Cross-Motions for Summary Judgment

Plaintiff moves for partial summary judgment on certain elements of her FMLA, WFLA, and WLAD claims, and all of Defendant's affirmative defenses.  Dkt. # 22.  Defendant moves for summary judgment on all claims.  Dkt. # 29.

#### i. Summary Judgment Standard

Summary judgment is proper only if the evidence, when viewed in the light most favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

"[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).  If the moving party bears the burden of proof on a claim, it "must show that the

---

[2] The Court will permit Partin to offer economic loss calculations based on various hypothetical situations that may include Plaintiff obtaining equivalent employment within a certain time.  Yet he may not opine on the likelihood that she would find such employment, given her qualifications/education, the competitiveness of the job market, or other factors beyond the scope of his expertise.

undisputed facts establish every element of the claim." *Chiron Corp. v. Abbott Lab'ys*, 902 F. Supp. 1103, 1110 (N.D. Cal. 1995). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Then, the nonmoving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.*

ii.   Exhaustion

Defendant argues for the first time in its motion for summary judgment that Plaintiff did not properly exhaust available remedies. Dkt. # 29 at 21–23; *see generally* Dkt. # 7. "The failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proved by the defendant." *Gergawy v. U.S. Bakery, Inc.*, 2:19-CV-00417-SAB, 2021 WL 608725, at *7 (E.D. Wash. Feb. 16, 2021). "Under the Federal Rules of Civil Procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleadings, and defenses not so raised are deemed waived." *Lee v. ITT Corp.*, C10-0618-JCC, 2013 WL 12092549, at *3 (W.D. Wash. Dec. 6, 2013), *aff'd*, 662 Fed. App'x 535 (9th Cir. 2016). Because Defendant did not plead this affirmative defense, they have waived this argument.

Even if Defendant had pleaded this affirmative defense, they have failed to show that exhaustion applies to FMLA, WFLA and WLAD claims. They cite numerous cases that are not analogous or applicable here. Dkt. # 29 at 21–23 (citing *Odegaard v. Everett Sch. Dist. No. 2*, 55 Wash. App. 685, 691, 780 P.2d 260 (1989), *Jones-Almlie v. Puyallup Sch. Dist.*, 127 Wash. App. 1031, 2005 WL 1178087, at *4 (2005), *Kilroy v. Los Angeles Unified Sch. Dist. Bd. Of Educ.*, 810 F. App'x 558, 559 (9th Cir. 2020), *Bignall v. N. Idaho Coll.*, 538 F.2d 243, 246 (9th Cir. 1976)). But none of these cases involve FMLA, WFLA, or WLAD claims; the Washington cases are both appeals of denials of petitions for review, in which Plaintiffs asked the court to

exercise its "entirely discretionary" powers to review administrative actions. *Odegaard*, 55 Wash. App. at 691, 780 P.2d at 263.  The Ninth Circuit cases address due process claims, which Plaintiff does not bring here.

Contrary to Defendant's assertions, no exhaustion requirement applies to Plaintiff's claims. *See Cloer v. United Food & Com. Workers Int'l Union*, No. C05-1526JLR, 2007 WL 601426, at *5 (W.D. Wash. Feb. 22, 2007) ("There is no requirement to exhaust administrative remedies before commencing a suit under the WLAD"); *Guadalupe v. City of Los Angeles*, No. CV 08-2194 AHM (JWJx), 2008 WL 5179034, at *3 (C.D. Cal. Dec. 9, 2008) (the FMLA "does not require a plaintiff to exhaust administrative remedies.").  That Plaintiff chose not to "meet informally with the board" (RCW 28.A.405.23) after being informed of her transfer to Director of Student Services is therefore irrelevant to her claims.

     iii.  Plaintiff's FMLA Claim

Plaintiff claims that the District interfered with her rights under the FLMA by failing to return her to the same or equivalent position after she took statutorily protected leave.  Dkt. # 22 at 10–13.  To succeed on this claim, she must establish that: (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) the employer denied her FMLA benefits to which she was entitled.  *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).  Plaintiff argues that she has met all five elements and is thus entitled to summary judgment on this claim.  Dkt. # 22 at 10–13.  Defendant seeks summary judgment on the claim as a whole "because Plaintiff returned to the same (or equivalent) position after returning from leave."  Dkt. # 29 at 13.

The first four elements appear undisputed, and Defendant does not address them in their response or motion.  *See* Dkt. # 23 at 179 (Plaintiff's application for FMLA leave, which was

approved); *see also Chang v. Straub Clinic & Hosp. Inc.*, 670 F. App'x 591, 592 (9th Cir. 2016) ("Regarding Chang's intentional infliction of emotional distress claim, his response to the summary judgment motion did not address Straub's argument that his claim is barred by Hawaii's workers' compensation statute.  He has therefore waived this issue.").

There is a genuine dispute of fact as to the fifth element, such that summary judgment is inappropriate.  One of the benefits that an employer must afford an employee under the FMLA is the restoration of that employee to her former position or an equivalent one upon completion of her leave.  29 U.S.C. § 2614(a)(1)6.  "An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status."  29 C.F.R. § 825.215(a).  The requirement "does not extend to de minimis, intangible, or unmeasurable aspects of the job," 29 C.F.R. § 825.215(f), but "must entail substantially equivalent skill, effort, responsibility, and authority."  29 C.F.R. § 825.215(a).

Plaintiff argues that she was not returned to an equivalent position upon completion of her leave because Teaching and Learning was removed from her supervision and replaced with Student Services.[3]  Dkt. # 22 at 12–14; Dkt. # 33 at 4–6.  Defendant counters that the position Plaintiff returned to after her leave was "virtually identical" to her previous role as a matter of law; although some of her job responsibilities shifted, she retained the same title, level of responsibility, position within the District's hierarchy, upper-level management pay, benefits, job location, and supervisor.  *See* Dkt. # 32 at 10–13.

---

[3] The Court concludes that Banner's decision not to renew Plaintiff's contract at the end of the school year is not relevant to Plaintiff's FMLA claim because it does not relate to whether she was restored to her former position or an equivalent one "on return from [FMLA] leave."  29 U.S.C. § 2614(a)(1).6.  But the decision to eliminate Plaintiff's position and reassign her to a subordinate position may constitute an adverse employment action under the WLAD, as discussed below.

Whether the changes to Plaintiff's position after she returned from leave were de minimis or substantial is a question of fact.  The main case cited by Defendant is *Waag v. Sotera Def. Solutions, Inc.*, in which the Fourth Circuit held that the plaintiff—despite being assigned to a different department upon his return from medical leave—was restored to an "equivalent position" under the FMLA because he maintained the same salary and benefits, position within the organizational hierarchy, and status as an "indirect employee."  857 F.3d 179, 187 (4th Cir. 2017).  But there, the court based its holding in part on the fact that the plaintiff's "primary responsibility in both positions was business development, a responsibility for which plaintiff was well-suited given his past experience."  *Id.*  Here, Plaintiff argues that her primary responsibilities were different after she returned from leave because Teaching and Learning and Student Services "perform entirely different functions—establishing and implementing academic curriculum versus a wide swath of non-academic services."  Dkt. # 33 at 4.  Further, Plaintiff explains that Teaching and Learning was a job she knew well and was passionate about, while she struggled to learn a new job to oversee Student Services.  *Id.* at 5.  The Court concludes that summary judgment would be inappropriate on this element of Plaintiff's FMLA claim.

The Court therefore grants Plaintiff's motion for summary judgment as to the first four elements of her FMLA claim and denies both parties' motions as to the last element.

        iv.     Plaintiff's WFLA Claim

"The WFLA 'mirrors its federal counterpart and provides that courts are to construe its provisions in a manner consistent with similar provisions of the FMLA.'"  *Martinez Patterson v. AT&T Servs. Inc.*, C18-1180-RSM, 2021 WL 3617179, at *11 (W.D. Wash. Aug. 16, 2021) (quoting *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D. Wash. 2013)). For the reasons stated above, the Court grants Plaintiff's motion for summary judgment as to the

first four elements of her WFLA claim and denies both parties' motions for summary judgment as to the final element.

### v.      Plaintiff's WLAD Discrimination Claim

WLAD proscribes discrimination in employment on the basis of sex, race, sexual orientation, disability, and other protected characteristics. RCW § 49.60.030. Summary judgment is often inappropriate in discrimination cases because WLAD mandates liberal construction. *Harrell v. Washington State ex rel. Dept. of Soc. Health Servs.*, 170 Wash. App. 386, 285 P.3d 159 (2012). In the disability discrimination context, an individual may present claims under two theories: (1) disparate treatment, and (2) failure to accommodate. *Hines v. Todd Pac. Shipyards Corp.*, 127 Wash. App. 356, 370, 112 P.3d 522 (2005). Plaintiff does not specify which theory she is pursuing but cites the Washington Pattern Jury Instructions for disparate treatment, which state:

> To establish [his] [her] claim of discrimination on the basis of disability, [Plaintiff] has the burden of proving each of the following propositions:
>
> (1) That [he] [she] *[has a disability]* [or] *[is perceived to have a disability]*;
> (2) That [he] [she] is able to perform the essential functions of the job in question *[with reasonable accommodation]*; and
> (3) That [his] [her] *[disability]* [or] [the perception of [his] [her] disability] was a substantial factor in [Defendant's] decision *[to terminate] [not to promote] [not to hire]* [him] [her] [to lay [him] [her] off].

Washington Pattern Jury Instructions—Civil ("WPI") 330.32. Accordingly, the Court assumes that she is proceeding under a "disparate treatment" theory of discrimination.

Plaintiff seeks summary judgment on the first two elements, while Defendant disputes the second element and argues in their motion that Plaintiff's WLAD discrimination claim should be dismissed in its entirety under *McDonnell Douglas* because the District "acted in the District's best interests." Dkts. ## 22 at 14–16; 29 at 17; 32 at 13–14.

On the first element, the parties do not dispute that Plaintiff had a disability as of August 5, 2019. *See* Dkt. # 23 at 198 ("Request for Admission No. 6. Admit that Kristi Smith had a disability on August 5, 2019 . . . Admit"); Dkt. # 32 at 13 ("Defendant does not dispute that Ms. Smith had a temporary disability").

As to the second element, Defendant appears to contend that Plaintiff could not perform the essential functions of her job as it existed before her leave, to the extent that it included oversight of Teaching and Learning, because that department "required daily management and consistency in leadership" that she could not provide given her reduced schedule. Dkt. # 32 at 14. But Defendant concedes that Plaintiff *was* able to perform the essential functions of her job "including oversight of Student Services upon her return to work part-time after leave on January 6, 2020." *Id.*[4]

Plaintiff argues that Defendant should be unable to dispute the second element of her WLAD discrimination claim because they testified unequivocally to the contrary. Dkt. # 33 at 6–8. In depositions, Plaintiff's counsel asked Superintendent Banner and Executive Director of Human Resources Lori McStay directly whether Plaintiff could "perform the essential functions of her job as assistant superintendent of instructional programs" with reasonable accommodations in January and March 2020. Dkt. # 23 at 50, 123–24. Both responded, "yes." *Id.* Plaintiff argues that Defendant cannot "create an issue of fact by . . . contradicting . . . prior deposition testimony." *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

---

[4] Plaintiff alleges multiple adverse employment actions, including the District's decision to (a) remove Teaching and Leadership from her oversight and replacing it with Student Services in January 2020, and (b) reorganize and eliminate the position of Assistant Superintendent of Instructional Programs, and subsequently demote her to Director of Student Services, at the end of her contract term. *See generally* Dkts. ## 1–1, 22, 33. Whether she could perform the essential functions of her pre-leave position (including oversight of Teaching and Learning) is relevant to the first alleged adverse action. Whether she could perform the essential functions of her post-leave position (including oversight of Student Services) is relevant to the section alleged adverse action.

ORDER - 17

But the Court concludes that Defendant's current position does not necessarily contradict its witnesses' prior testimony.  Plaintiff's title did not change in January 2020 when she returned from leave, so whether she could perform the essential functions of her job "as Assistant Superintendent of Instructional Programs" could have referred to her job as it existed before her leave (including oversight of Teaching and Learning) or as it existed in January 2020 (after Teaching and Learning were moved to Brian Laubach in exchange for Student Services). Further, in the *Kennedy* case cited by Plaintiff, the Court explained that a party is bound by its prior deposition testimony only if the district court "make[s] a factual determination that the contradiction was actually a 'sham.'" *Id.* at 267.  The Court concludes that Defendant's current position is not a "sham" because it is not necessarily inconsistent with its witnesses' prior deposition testimony.

Turning to Defendant's arguments for outright dismissal, Washington courts have largely adopted the *McDonnell Douglas* standard when evaluating motions for summary judgment on state law discrimination claims when the plaintiff lacks direct evidence of discriminatory animus. *Hill v. BCTA Income Fund-I*, 144 Wash. 2d 172, 190 (2001), abrogated on other grounds by *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittias Cnty.*, 189 Wash. 2d 516 (2017).[5]  Under the *McDonnell Douglas* standard, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–803 (1973).  Once the plaintiff has done so, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Id.*  If the employer articulates a legitimate

---

[5] *McDonnell Douglas* burden shifting occurs in the context of the third element of a WLAD claim, when assessing whether discriminatory intent was a substantial factor in the employer's decision. Defendant's brief does not parse the elements, but its argument for summary judgment is based on *McDonnell Douglas* and thus implicitly challenges Plaintiff's ability to meet the third element of her claim.

reason, the plaintiff must raise a triable issue that the employer's proffered reason is pretext for unlawful discrimination. *Id.*; *see also Austin v. Univ. of Oregon*, 925 F.3d 1133, 1136 (9th Cir. 2019) ("The [*McDonnell Douglas*] framework is a tool to assist plaintiffs at the summary judgment stage so that they may reach trial.").

But under Washington law, courts are still "free to adopt" theories and rationales other than the *McDonnell Douglas* standard when they "best further the purposes and mandates of our state statute." *Id.* When there is direct evidence of discriminatory intent, courts use the direct evidence test. Under the direct evidence test, a plaintiff can establish a prima facie case by providing direct evidence that (1) the defendant employer acted with a discriminatory motive, and (2) the discriminatory motivation was a significant or substantial factor in an employment decision. *Kastanis v. Educ. Emps. Credit Union*, 122 Wash.2d 483, 491, 859 P.2d 26 (1993); *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wash. App. 734, 743, 315 P.3d 610 (2013).

The Court concludes that Plaintiff has produced sufficient evidence to establish a discrimination claim under the direct evidence test. For example, a reasonable jury could conclude that Banner's memorandum to the Board of Directors, in which he invokes Plaintiff's disability as the reason for removing Teaching and Learning from her oversight, is direct evidence of discriminatory intent, as well as evidence of causation. *See* Dkt. # 23 at 204 ("to accommodate her needs we moved Teaching and Learning to Brian Laubach to ensure consistency in leadership."). Similarly, a reasonable jury could conclude that the "Post-It note" Banner affixed to Plaintiff's doctor's note outlining her condition, which reads "change in duties to—S.S.," is direct evidence of discriminatory intent, as well as evidence of causation. *See* Dkt. # 23 at 234.

Plaintiff has also produced sufficient evidence of pretext under the *McDonnell-Douglas* test to survive a motion for summary judgment. For example, Defendant cites nondiscriminatory

educational business interests that motivated its decision to promote Laubach to Deputy

Superintendent, eliminate Plaintiff's position as Assistant Superintendent of Instructional

Programs, and thereby reassign her to the position of Director of Student Services.  *See, e.g.*,

Dkt. # 29 at 19–21.  Plaintiff counters that these "educational business interests" amount to

pretext, given Plaintiff's general upward trajectory and pattern of promotions before her injury,

Banner's statements that he would likely promote her to Deputy Superintendent over Laubach,

and the fact that the reorganization negatively impacted only Plaintiff while not resulting in any

financial or organizational benefit to the District.  *See* Dkt. # 23 at 15, 40–43, 220–223.

 For these reasons the Court grants Plaintiff's motion for summary judgment as to the first

element of her WLAD discrimination claim, that Plaintiff had a disability under the statute.  The

Court also grants Plaintiff's motion for summary judgment as to the second element, that she was

able to perform the essential functions of her job, as it relates to her post-leave job which

included oversight of Student Services.  The Court denies Plaintiff's motion for summary

judgment as to the second element, as it relates to her pre-leave job which included oversight of

Teaching and Learning.  The Court denies Defendant's motion for summary judgment.

 vi. Plaintiff's WLAD Retaliation Claim

 To establish a prima facie case of retaliation, an employee must show that: (1) the

employee took a statutorily protected action, (2) the employee suffered an adverse employment

action, and (3) a causal link between the employee's protected activity and the adverse

employment action.  *Cornell v. Microsoft Corp.*, 192 Wash.2d 403, 411–12, 430 P.3d 229

(2018).  Plaintiff seeks summary judgment on the first two elements.  Dkt. # 22 at 16–17.

Defendant disputes all elements and moves for summary judgment on the claim as a whole

because "the District Superintendent acted in the District's best interests."  Dkt. # 29 at 17.

As to the first element, Plaintiff argues that taking leave or requesting accommodations relating to one's disability are statutorily protected activities under the statute.  Dkt. # 22 at 16; Dkt. # 33 at 9–10.  She also argues that she reported what she believed to be discriminatory activity to her superiors, filed a claim with the Washington HRC, submitted Public Records Act requests through counsel, and filed a tort action and this lawsuit, which all constitute protected activities.  Dkts. ## 22 at 16–17; 33 at 9–10; 34 at 16–17.  Defendant argues that taking or requesting leave is not statutorily protected, and that Plaintiff must instead show that she "opposes unlawful employment practices believed to be discriminatory with regard to taking of such leave."  Dkt. # 32 at 15 (citing *Lodis v. Corbis Holdings Inc.*, 192 Wash. App. 30, 50, 366 P.3d 1246 (2015)).  Their position is that Plaintiff's communications with her supervisors and related actions did not constitute opposition to unlawful employment practices.  *Id.* at 15–17.

Notwithstanding the language of the statute, Washington courts have held that requesting accommodations constitutes a protected activity under the retaliation provision of the WLAD.[6] *See Hartman v. Young Men's Christian Ass'n of Greater Seattle*, 191 Wash. App. 1005, 2015 WL 6872184, at *11 (2015) (holding, in the context of a WLAD retaliation claim, that "requesting an accommodation for a disability is a protected action under the WLAD"); *see also Bell v. Boeing Co.*, No. 20-CV-01716-LK, 2022 WL 1166498, at *14 (W.D. Wash. Apr. 20, 2022) (employee engaged in activity protected by Washington Law Against Discrimination (WLAD) when he requested accommodation for his sleep disorder); *McElwain v. Boeing Co.*, 244 F. Supp. 3d 1093, 110 (W.D. Wash. 2017) ("requesting reasonable accommodations . . . under the . . . WLAD . . . constitutes protected activity").  The parties agree that Plaintiff

---

[6] Plaintiff does not cite on-point Washington law to support the proposition that taking leave constitutes protected activity under the retaliation of the WLAD.  Nor has the Court found any such authority.

requested accommodations for her disability.  *See, e.g.*, Dkt. # 23 ("Dear Kristi, this letter is in response to your request for an accommodation for your temporary disability . . .").  The Court therefore finds that Plaintiff's request for accommodations was a protected activity as a matter of law.

Washington courts have held that reporting what one reasonably believes to be a discriminatory activity is protected, regardless of whether the practice is unlawful.  *See, e.g.*, *Davis v. One Auto. Grp.*, 140 Wash. App. 449, 160, 166 P.3d 807 (2007) (reporting racially discriminatory comments to human resources constitutes a protected activity).  The Court concludes that Plaintiff's April 19, 2020 "Concern" email, addressed to Lori McStay, Director of Human Resources, constitutes a protected activity because it directly references disparate treatment based on Plaintiff's disability.  *See, e.g.*, Dkt. # 35 at 237 ("From all the information I have received, the District has not followed its own anti-discrimination/retaliation policies or the various laws on these subjects.").  Similarly, Plaintiff's submission of her Human Rights Commission charge constitutes a protected activity.  *Id.* at 251–254; *see Bailey v. Kent Sch. Dist.*, 194 Wash. App. 1002, at *9 (2016); RCW 49.60.210(1).  Lastly, Plaintiff's participation in legal actions against her employer constitute protected activity, because this represents "oppos[ition] to employment practices forbidden by antidiscrimination law or other practices that [she] reasonably believed to be discriminatory."  *Alonso*, 178 Wash.App. at 754, 315 P.3d at 620.

But the Court sees various issues of fact that preclude summary judgment on whether Plaintiff's other written and verbal communications with her supervisors are analogous to the reports in cases such as *Davis*.  For example, her emails to Banner and McStay do not reference unlawful practices or discrimination, and a reasonable jury could conclude that she was simply expressing her opinion that her colleagues were frustrated with her medical condition.  *See* Dkt. # 23 at 241.  Similarly, Plaintiff's verbal comments to Banner and HR do not state that she is

reporting discriminatory action by the District.  For example, in the excerpt from her deposition referenced in her Response, she states that "there was a little bit of an exchange" between her and Banner about communication within the special education department.  Dkt. # 35 at 105–16. Banner stated, "Are you thinking this is just about you?" and Plaintiff stated, "Yes, I do."  *Id.* While a reasonable jury could find this statement analogous to the plaintiff's report in *Davis*, they could also find that it was too vague to qualify as a report of discrimination.

On the second element, Plaintiff lists several alleged adverse employment actions in her response to Defendant's motion for summary judgment.  Dkt. # 34 at 17–18.  The Court concludes that the District's decision to eliminate Plaintiff's position, thereby reassigning her to Direct of Student Services (and, by extension, removing her from the Superintendent's Council), Banner's decision not to promote Plaintiff to Deputy Superintendent, and Banner's decision not to appoint Plaintiff to the Assistant Superintendent position vacated by Laubach, constitute adverse employment actions as a matter of law.  *See Crownover v. State ex rel. Dep't of Transp.*, 165 Wash. App. 131, 148, 265 P.3d 971 (2011) (*citing Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (an adverse employment action means a tangible change in employment status, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").  The Court concludes that there are issues of fact as to whether the remaining actions listed by Plaintiff constitute adverse employment actions.  Whether assigning Plaintiff Student Services in place of Teaching and Learning is an adverse employment action presents a question of fact that depends on whether the jury believes this change was "more than an inconvenience or alteration of one's job responsibilities."  *See Boyd v. State, Dep't of Soc. & Health Servs.*, 187 Wash. App. 1, 13, 349 P.3d 864 (2015).  Similarly, whether the District "fail[ed] to engage in the WLAD's required 'interactive process'," "failed to investigate potential discrimination in accordance with its own

1   investigative guidelines," "allow[ed] a hostile work environment based on Smith's disability to

2   persist," or "refus[ed] to impartially investigate Smith's October 2020 complaint of

3   discrimination," are highly factual questions that involve considering various actions and

4   inactions by both parties, thus precluding summary judgment.

5        As for the third element of Plaintiff's WLAD retaliation claim, Washington courts use the

6   same *McDonnell Douglas* burden shifting framework as in discrimination claims.  Defendant

7   cites nondiscriminatory educational business interests that motivated its decisions.  *See, e.g.*, Dkt.

8   # 29 at 19–21.  But as discussed above in connection with the discrimination claim, the Court

9   concludes that Plaintiff has submitted sufficient evidence of pretext under the *McDonnell*

10  *Douglas* framework to survive a motion for summary judgment.  *See* Dkts. ## 23 at 15, 40–43,

11  220–223.

12       Accordingly, the Court grants in part Plaintiff's motion as to the first element of her

13  WLAD retaliation claim.  It concludes that her request for accommodations, her April 19, 2020

14  "Concern" email, her Human Rights Commission charge, and her participation in lawsuits

15  against the District constitute protected activities.  The Court denies Plaintiff's motion as to her

16  other alleged protected activities.  The Court grants in part Plaintiff's motion as to the second

17  element of her WLAD retaliation claim.  It concludes that Defendant engaged in adverse

18  employment actions when it eliminated Plaintiff's position, thereby reassigning her to a

19  subordinate position (and removing her from the Superintendent's Council), chose not to

20  promote her to Deputy Superintendent, and chose not to appoint her to the Assistant

21

22

23

24

Superintendent position vacated by Laubach.  The Court denies Plaintiff's motion as to the other

alleged adverse employment actions.  The Court denies Defendant's motion.[7]

### vii.    Defendant's Affirmative Defenses

Defendant initially asserted ten affirmative defenses.  *See* Dkt. # 7.  In their response to

Plaintiff's motion for summary judgment, they withdraw their first affirmative defense (statute of

limitations) without caveat.  Dkt. # 32 at 18.  They also appear to withdraw their second, fourth,

sixth, eighth, and tenth affirmative defenses, but their exact position on these defenses is unclear

due to their inclusion of vague caveats.  *Id.*  The Court therefore addresses each such affirmative

defense.

As for Defendant's second affirmative defense (failure to state a claim), Defendant states

that they are "willing to withdraw [this affirmative defense] for the purposes sought in Plaintiff's

motion related to Plaintiff's FMLA, WLAD, and [WFLA] claims only."  *Id.*  It is unclear to the

Court what other claims exist beyond Plaintiff's FMLA, WLAD, and WFLA claims.  In her

complaint, the only remaining cause of action is unlawful wage withholding under RCW

49.52.070, which depends on her FMLA, WFLA, and WLAD claims.  The Court therefore does

not see why Defendant included such a caveat in their Response.  In any case, Defendant has not

filed a Rule 12 motion or otherwise argued that Plaintiff has failed to state a claim on which

relief can be granted, and the Court concludes that Plaintiff has alleged sufficient facts to state a

claim on each of her current causes of action.  The Court therefore dismisses Defendant's second

affirmative defense.

---

[7] Defendant's motion cites case law on FMLA retaliation and discrimination claims.  *See* Dkt. # 29 at 16–17.  Plaintiff does not appear to be currently pursuing such claims, as her submissions only discuss FMLA and WFLA interference claims.  *See generally* Dkts. ## 22, 33, 34.

Defendant's third affirmative defense is that Plaintiff's transfer was "lawful under RCW 28.405.230." Dkt. # 7 at 10.  While it is true that this statute provides a mechanism for transferring an administrator to a subordinate certificated position when a superintendent deems it in "the best interests of the school district," it does not provide a shield against allegations of discrimination or retaliation.  Nothing in the statute allows a superintendent to transfer an individual to a subordinate position if that transfer is motivated by discriminatory or retaliatory intent.  *Id.*   And as discussed above, Plaintiff need not "exhaust" any administrative remedies, such as the option to informally meet with the school board about a transfer, to proceed with a claim of discrimination or retaliation.  *See* Section B(ii), *supra*.  Defendant may argue that Plaintiff's transfer was not motivated by a discriminatory or retaliatory motive and may reference RCW 28A.405.230 during trial.  But the Court concludes that the statute is not an affirmative defense in that it cannot "deny plaintiff's right to recover, even if the allegations of the complaint are true."  *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).  The Court therefore dismisses this affirmative defense.

Defendant's fourth affirmative defense is that, "upon return from medical leave, Smith was provided appropriate and reasonable accommodations."  Dkt. # 7 at 10.  In its Response to Plaintiff's Motion for Summary Judgment, they stated that they are "willing to withdraw affirmative defense[] 4 . . . to the extent those issues remain non-issues in this case."  Dkt. # 32.  The Court does not see how Defendant's statement qualifies as an affirmative defense.  It appears from Plaintiff's submissions that she is proceeding under a theory of disparate treatment rather than a theory of failure to accommodate.  *See* Section B(v), *supra*.  The Court dismisses this affirmative defense.

Defendant's fifth affirmative defense is that "the decisions Plaintiff challenges were based on reasonable business factors other than Plaintiff's alleged disability, sex, or other

claimed protected class." Dkt. # 7 at 10.  Again, this statement is not an affirmative defense to the extent that it shields Defendant from liability even if the allegations in the complaint are true. *See Zivkovic*, 302 F.3d at 1088.  If Defendant wishes to argue that their actions were motivated by nondiscriminatory reasons, they may do so.  The Court also notes that to succeed on her WLAD claims, Plaintiff need not show that her protected characteristic was the *only* factor in the District's decisions, only that it was a "substantial factor."  *See Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wash.2d 302, 310, 898 P.2d 283 (1995).  The Court dismisses this affirmative defense.

Defendant's sixth affirmative defense is:

Plaintiff has failed to state a prima facie case under any of the claims or causes of action she has asserted.  In the alternative, assuming Plaintiff has stated a prima facie case, all conduct and actions on the part of the District concerning Plaintiff were wholly based on legitimate, nondiscriminatory, and non-retaliatory reasons.

Dkt. # 7 at 10.  In their Response to Plaintiff's Motion for Summary Judgment, Defendant states, "Defendant is willing to withdraw affirmative defense 6, for the limited purposes mentioned in Plaintiff's motion that these issues go to Plaintiff's underlying proof of her FMLA and/or WLAD claims." Dkt. # 32 at 18.  The Court agrees that Defendant's statement is not an affirmative defense but a conclusory statement that they did not violate state or federal law.  The Court also concludes that this statement goes to Plaintiff's WFLA claims, in addition to her WLAD and federal FMLA claims.  The Court dismisses this affirmative defense.

Defendant's seventh affirmative defense is that Plaintiff has failed to mitigate her alleged damages. Dkt. # 7 at 10.  "The doctrine of mitigation of damages . . . prevents recovery for those damages the injured party could have avoided by reasonable efforts taken after the wrong was committed." *Bernsen v. Big Bend Elec. Co-op., Inc.*, 68 Wash. App. 427, 433, 842 P.2d 1047 (1993).  The burden to prove a mitigation defense is on the defendant. *Henningson v. Worldcom,*

*Inc.*, 102 Wash. App. 828, 846, 9 P.3d 948 (2000).  Although mitigation is often pleaded as an affirmative defense in wrongful termination cases, Plaintiff has cited no cases holding that it does not apply in demotion or transfer cases.  Given that there appear to be factual issues regarding mitigation, the Court will allow Defendant to present argument and evidence that Plaintiff could have mitigated her damages.  But per the Court's ruling on Plaintiff's Motion to Strike Experts (Dkt. # 20), *see* Section A, *supra*, Partin and Santorno may not testify as experts on this topic.

Defendant's eighth affirmative defense is that the District "exercised reasonable care to prevent and/or correct any alleged harassing or disparate treatment or behavior."  Dkt. # 7 at 10.  The nature of this affirmative defense is unclear.  Defendant's statement is not an affirmative defense to any of Plaintiff's claims as set forth in her complaint.  The Court dismisses this affirmative defense.

Defendant's ninth affirmative defense is that Plaintiff "unreasonably failed to use preventative or corrective opportunities that were communicated to [her]."  Dkt. # 7 at 10.  The nature of the "preventative or corrective opportunities" referenced in Defendant's submissions is unclear to the Court.  To the extent that Defendant refers to Plaintiff's alleged failure to mitigate her damages, the Court will allow Defendant to present evidence and testimony on this topic.  To the extent that Defendant refers to other preventive or corrective opportunities, the Court dismisses this affirmative defense.

Defendant's tenth and last affirmative defense is that "damages, if any, sustained by Plaintiff[] were proximately caused by persons other than Defendant and Defendant has no legal liability, either direct or vicarious."  Dkt. # 7 at 10.  Defendant states in its Response to Plaintiff's Motion for Summary Judgment:

Defendant is willing to withdraw affirmative defense 10 to the extent it relates to anyone other than Plaintiff.  To the extent it relates to Plaintiff the motion should be denied.  This Court has found that a plaintiff can contribute to his own damages in an employment case.  *See, e.g.*, *Mooney v. Roller Bearing Co. of Am., Inc.*, No. C20-01030-LK, 2022 WL 1014904, at *12 (W.D. Wash. Apr. 5, 2022), amended on reconsideration, No. C20-01030 LK, 2022 WL 1289600 (W.D. Wash. Apr. 29, 2022).

The case cited by Defendant involved an employee who failed to obtain a timely "fitness for duty" certification, which caused a delay in his reinstatement.  There is no similar allegation in this case, and Defendant's position on causation is unclear to the Court.  If Defendant plans to argue that Plaintiff caused her damages to increase because she failed to mitigate, they may present this affirmative defense.  If Defendant plans to present arguments on causation that fall outside the scope of their mitigation defense, the Court dismisses this affirmative defense.

**IV**

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part Plaintiff's Motion to Strike Experts (Dkt. # 20).  Carla Santorno may not testify at trial on topics outside the scope of her initial report.  William Partin may not offer testify as to Defendant's mitigation defense.

The Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment (Dkt. # 22), and DENIES Defendant's Motion for Summary Judgment (Dkt. # 29).

As to Plaintiff's FMLA claim, the Court GRANTS Plaintiff's motion for summary judgment as to the first four elements—that she was eligible for the FMLA's protections, that her employer was covered by the FMLA, that she was entitled to leave under the FMLA, and that she provided sufficient notice of her intent to take leave—and DENIES both parties' motions as to the last element.  The Court's ruling on the WFLA claim mirrors this ruling.

As to Plaintiff's WLAD discrimination claim, the Court GRANTS Plaintiff's motion as to the first element, that she had a disability.  The Court also GRANTS Plaintiff's motion for

summary judgment as to the second element, that she was able to perform the essential functions of her job, as it relates to her post-leave job which included oversight of Student Services.  The Court DENIES Plaintiff's motion for summary judgment as to the second element, as it relates to her pre-leave job which included oversight of Teaching and Learning.  The Court DENIES Defendant's motion for summary judgment.

As to Plaintiff's WLAD retaliation claim, the Court GRANTS in part Plaintiff's motion as to the first element of her WLAD retaliation claim.  It concludes that her request for accommodations, her April 19, 2020 "Concern" email, her Human Rights Commission charge, and her participation in lawsuits against the District constitute protected activities.  The Court DENIES Plaintiff's motion as to her other alleged protected activities.  The Court GRANTS in part Plaintiff's motion as to the second element of her WLAD retaliation claim.  It concludes that Defendant engaged in adverse employment actions when it eliminated Plaintiff's position, thereby reassigning her to a subordinate position (and removing her from the Superintendent's Council), chose not to promote her to Deputy Superintendent, and chose not to appoint her to the Assistant Superintendent position vacated by Laubach.  The Court DENIES Plaintiff's motion as to the other alleged adverse employment actions.  The Court DENIES Defendant's motion.

The Court DISMISSES Defendant's first, second, third, fourth, fifth, sixth, and eighth affirmative defenses.  The Court will permit Defendant to present the affirmative defense of failure to mitigate damages.  To the extent that Defendant's ninth and tenth affirmative defenses go to failure to mitigate, the Court will allow them to present them.  To the extent that these affirmative defenses fall outside the scope of mitigation, the Court DISMISSES them.

Dated this 16th day of December, 2022.

John H. Chun
United States District Judge